### CASTON v. CONNELL et al.

Court of Appeal of Louisiana. First Circuit.
March 7, 1933.

Laycock & Moyse and C. C. Bird, all of Baton Rouge, for appellant.

Taylor, Porter & Brooks, of Baton Rouge, for appellees.

## PER CURIAM.

Mrs. Lewis Caston, plaintiff, prays for a rehearing herein, alleging for grounds that the opinion of this court in stating that, "Mr. Caston was not seen by any witness as he entered on the street, therefore none of the witnesses saw him cross the south side of the street," is an error of fact. The testimony of Miss Inez Deering at the bottom of page 55 and the top of page 56 in the transcript of the testimony is referred to as showing error in that respect.

The statement is the conclusion of this court, reached after our first examination of the record. We quote Miss Deering in order to show what she said. The quoted part is not all she said, but it shows the general tenor of her answers on the subject:

"Q. Will you tell me where this old man was when you first noticed him? A. He had just stepped out into Government street.

"Q. From which side? A. The south side.

"Q. Do you recall from where he had stepped, from what part of the street. Was it near any street on the south side? A. It was not exactly from the corner, it was a little further down.

"Q. A little further which way? A. A little further west.

"Q. Was he opposite any street when he crossed? A. He was almost opposite Brice street.

"Q. You say you saw him when he just stepped into the street? A. He was in the street when I first saw him.

"Q. Who saw him first, you or your aunt? A. I think I did.

"Q. What did he do? A. He was just walking across the street.

"Q. How far across did he go? A. He was about almost half way between the north rail and the south track on the north side of Government, near the railing on the north side.

"Q. Did your aunt continue to drive after she saw this old man? A. A little way. We saw him before we reached the corner, a good little ways.

"Q. What did your aunt do? A. She blew her horn and stopped.

"Q. Did she stop still? A. Yes, a full stop.

"Q. About what point did you stop. Where was the front of her car when she stopped? A. It was before we reached the side-walk on Brice street.

"Q. What did this old gentleman do then, when you stopped and blew the horn? A. He

looked up and realized that there was a car there and he stepped back."

A blue print made by Mr. Mundinger shows that Government street, from the curbing to each side of the car track, is 17.5 feet. The street car track is 5.5 feet wide. Whether the above width takes into account the car tracks, the blue print is not clear, but the exact width of the intervening space mentioned is not important. When Mrs. Fauver and Miss Deering speak of seeing Mr. Caston south of the car tracks or north of the car tracks, that is approximately the width of the space in which he must have been at the time.

We desire to admit that our statement in the opinion, that "Mr. Caston was not seen by any witness as he entered on the street, therefore none of the witnesses saw him cross the south side of the street"—overlooks the fact that Miss Deering does say, when first asked where he was when she first noticed him, that he had just stepped out into Government street (meaning on the south side). But her subsequent answers create the belief that when she first called her aunt's attention to him, he was on the north side of the street, close at hand, and that the stopping by her aunt of her automobile, the sounding of her horn, and the jumping back and striking by Mr. Caston of the trailer passing behind him at that time, must be estimated in seconds. And it is certain that he was at that time on the north side of the street. Miss Deering after first answering as above quoted, was again asked:

"Q. You say you saw him when he just stepped into the street? A. He was in the street when I first saw him.

"Q. Who saw him first, you or your aunt? A. I think I did."

Her answers are to the effect that he was not only in the street, but that she herself was not sure which was the first to see him, and that if she was the first to see him, only a very short interval of time elapsed after she had seen him, before he was also seen by her aunt.

"Q. Did your aunt continue to drive after she saw this old man? A. A little way.—We saw him before we reached the corner, a good little ways."

In this answer she says that they both saw him before they reached the corner.

"Q. What did your aunt do? A. She blew the horn and stopped."

█ The testimony of Mrs. Fauver has bearing on the place where Mr. Caston was when seen by Miss Deering.

"Q. Do you recall anything that happened when you approached Brice street? A. Yes. Before I got to Brice street there was a man walking across the street. My niece told me, 'Look out Aunt Laura, there is a man coming

across.' I slowed down and blew the horn. Just before he came across the street-car line I stopped.

"Q. How near to Brice street were you when you came to a full stop? A. I was right at the corner.

"Q. Did you notice this man when he stepped into the road-way of Government street, or not? A. I did not see him just as he stepped in, my niece saw him first. I was looking ahead where I was driving.

"Q. Don't tell what your niece saw. How far into the street had he gotten when you first saw him? A. Not very far, about half way, I should think, from the car line to the curb.

"Q. You mean half way from the south curb of the car line when you saw him? A. Yes, just about. I do not know exactly, but he was in the street."

Although Mrs. Fauver testifies that when she first saw Mr. Caston he was on the south side of the car line, her further testimony and other testimony, makes it sure that when she slowed down to a full stop to avoid striking Mr. Caston and sounded her horn, he was right at the front end of her left front fender, and at that time it is certain that he was on the north side of the street. In fact when Miss Deering called out to her, "Look out Aunt Laura, there is a man coming across," he was evidently at that time on the north side of the street and approaching so close to their automobile that Miss Deering saw danger in his approach. She called out to her aunt impulsively and her aunt immediately slowed down to a full stop and sounded her horn, and Mr. Caston, seemingly unaware of her presence, upon discovering that he was so near to being struck by her automobile, was so alarmed that he jumped back, all of which certainly took place on the north side of the street.

Therefore the testimony of Miss Deering at the outset that she saw Mr. Caston just as he stepped from the south curbing into Government street does not change our conclusion as to the responsibility of defendants for the death of Mr. Caston and it affords no reason for changing our opinion on that subject. Plaintiff next contends in her petition for rehearing that we erred in holding that it was not negligence on the part of defendants' driver and those on the truck with him to fail to see Mr. Caston until he was in the center of the street car track going north, just 15 feet in front of them, etc.

The evidence shows with certainty that Mr. Caston must have passed, that is, crossed the pathway of the truck ahead of it. He was going north across the street while the truck was going east along the street and it is certain that the truck had passed him as stated in our opinion. Defendants' driver, having passed him, cannot be held to have been negligent and at fault for not anticipating that he would, upon suddenly discovering himself right in front of Mrs. Fauver's automobile and her presence made known by the sounding of her horn right at him, in his alarm jump back against the trailer. The evidence does not satisfactorily show how far Mr. Caston jumped back. Defendants' driver estimates the distance at 7 or 8 feet. It is not certain that he jumped back that distance, but under all the evidence he jumped back suddenly and quickly against the passing trailer, an occurrence that the driver cannot be charged with fault for not having foreseen and guarded against. It was the act of Mrs. Fauver that caused him to jump back and defendants' driver could not foresee that she would, unintentionally of course, bring about what took place.

■ It is urged that we have erred in holding that defendants' driver was not driving faster than 15 miles an hour, the maximum speed under the ordinances of the city of Baton Rouge.

We do not think our conclusion on that subject is in error, and the estimates upon which plaintiff depends to show a greater speed are not satisfactory to us. The plaintiff contends on the subject of the speed at which defendants' truck was being driven that Mrs. Fauver testified that the truck went a half block before it stopped, etc., and that her testimony is supported by a policeman who came to the place soon after the accident.

The negro truck driver testifies that he stopped his truck within 10 feet after the impact, that he then started up again and drove on parking on the south side. The policeman was not present at the time of the impact and he did not contradict the negro driver. Mrs. Fauver might have turned and looked to see if the driver of the truck stopped, but the testimony of the driver is not satisfactorily refuted when he says that he stopped, then started up and drove diagonally to the south side of the street.

■ It is urged that we erred in holding that the truck at the time of the impact between the trailer and Mr. Caston was not being driven on the wrong side of the street.

The evidence is conflicting on this subject. Defendants' driver with the support of the other occupants of the truck says he was not driving on the wrong side of the street. Mrs. Fauver and Miss Deering say he was. The entire matter has been re-examined and we are of the opinion that the preponderance and most dependable facts established beyond dispute are to the effect that defendants' truck was not being driven on the wrong side of the street.

It is argued that we have erred in accepting the evidence of a negro truck driver who had an interest in exonerating himself from a possible criminal charge, in preference to believing the disinterested testimony of Mrs. Fauver and her niece.

The way the evidence impressed us when we first examined the case and it now impresses us in the same way, is that defendants' truck driver was interested in exonerating himself from fault and negligence in the matter which resulted in the death of Mr. Caston; that interest he felt was duly taken into account, but we also took into account the fact that Mrs. Fauver also had an interest in exonerating herself from fault and carelessness in driving up so close to Mr. Caston walking slowly across the street just ahead of her; that when she stopped to avoid striking him and sounded her horn right at him, he was thereby suddenly alarmed and startled so that he unthinkingly jumped backwards against the passing trailer. Her interest in the matter was shared by her niece. Mrs. Fauver of course had no idea that Mr. Caston would jump back against the trailer; neither did the negro driving the truck.

Plaintiff urges error in some other matters that do not seem to call for any particular notice. We have re-examined the case; the correction we make as to the testimony given by Miss Deering does not require that a rehearing be granted. Our opinion remains unchanged.

The rehearing prayed for by the plaintiff herein is refused.